## DICK BRUNDIGE v. THE STATE.

### No. 3153.    Decided April 18, 1906.

**1.—Assault With Intent to Murder—Evidence—Rebuttal.**

Where upon a trial with intent to murder the defendant showed that he carried a pistol because his life was threatened by third parties, and on cross-examination the State asked the defendant's witness if there was a woman in the case, to which he replied affirmatively, the defendant should have been permitted to ask the witness whether or not defendant had anything to do with the woman in the case, and to show that he had nothing whatever to do with the difficulty with such third parties with the woman, and that the difficulty between appellant and prosecutor had nothing to do with appellant carrying a pistol.

**2.—Same—Evidence—Cross-Examination.**

Upon a trial of assault with intent to murder it was competent for defendant in cross-examination of the State's witness, to have shown that the note which it was claimed prosecutor owed and which defendant was trying to collect from him, had not been paid at the time of the difficulty.

**3.—Same—Evidence—Impeachment of Witness.**

Upon a trial for assault with intent to murder it was not competent for the defendant to lay a predicate for impeachment of State's witness upon a collateral issue, to wit: that the witness denied that he had stolen a watch; and then attempt to contradict this testimony by another witness.

**4.—Same—Evidence—Religious Belief of Witness.**

Where upon trial for assault with intent to murder the defendant offered to prove that the prosecutor had said that he did not believe there was any Heaven or Hell, or any God, and the court refused to admit such testimony, there was no error.

**5.—Same—Hearsay Evidence.**

Upon trial for assault with intent to murder, there was no error in excluding the testimony of defendant's witness to the effect that he had been approached by persons with a message from prosecutor that if he would pay him $50 or $60, he would leave the country and not testify against defendant. This matter could only have been used in the event said State's witness had denied it first, as a predicate for impeachment.

**6.—Same—Charge of Court—Credibility of Witness.**

See opinion for facts which should have been limited by the court's charge to the credibility of the State's witness.

Appeal from the District Court of Johnson. Tried below before Hon. W. C. Wear.

Appeal from a conviction of assault with intent to murder; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*S. C. Padelford* and *Odell, Phillips & Johnson,* for appellant.

*J. E. Yantis,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of assault with intent to murder, and his punishment fixed at two years confinement in the penitentiary; hence this appeal.

The proof shows that appellant, Dick Brundige, and T. M. Ballinger (prosecutor) were neighbors. On the night the assault is alleged to have occurred, it seems that the parties were in Alvarado, and were drinking. These parties, together with Williams, left town in prosecutor's buggy going home—all living in the same neighborhood. According to the State's theory, on the way appellant was boisterous and as he passed a house would curse and hallo at the inmates. He drew his pistol, got out of the buggy, and went to a fence as if to shoot something, found it was a paper, and said he thought it was a calf. Prosecutor reprimanded him about his conduct, and told him he would get into trouble, and lectured him about carrying a pistol and insulting strangers. Meantime Williams had gotten out of the buggy and gone to his home, and appellant and prosecutor came to where appellant lived. He got out of the buggy, and because of the lecture given him by prosecutor, became angry and shot prosecutor, inflicting two wounds: one of which was severe. Prosecutor says he was doing nothing at the time appellant shot him. Appellant's theory is, that when they got to his house, he invited prosecutor to get out and stay all night. Whereupon prosecutor began to curse and abuse his father in regard to a note of $35 appellant had been endeavoring to collect for some party whom prosecutor owed; that prosecutor got out of the buggy, advanced towards him, and threw his hand behind, as if he was going to shoot him, whereupon appellant shot prosecutor in self-defense. While the shooting was going on, prosecutor's horse became frightened, and ran off with the buggy. After prosecutor was

shot, he ran up the road and fell in the lane, where he was afterwards found by appellant and his father. Some other parties came up soon afterwards. This is a sufficient statement of the case to discuss the assignments.

Appellant's first bill of exceptions raises the following question: W. E. Brundige testified that the reason defendant was carrying his pistol at the time of the difficulty was that his life had been threatened by certain parties, and that witness told his son to carry the pistol to defend himself. Defendant's life had been threatened by the Williams boys, and he was carrying the pistol because of such threats. On cross-examination the State asked the witness, "Was there a woman in the case?" To which he replied, "Yes, sir." On re-examination, defendant proposed to ask the witness to state whether or not defendant had anything to do with the woman in the case, etc. This was objected to and excluded. Appellant expected to prove by the witness, that defendant had nothing whatever to do with the difficulty or with the woman; that it was a brother of the defendant who was with the woman and not defendant; that defendant was not in the county at the time the difficulty arose about the woman. It does not appear, so far as the State's examination went, that the difficulty between appellant and prosecutor had anything to do with appellant carrying the pistol. The proof showed that he was carrying the pistol because the Williams boys had threatened his life. It was competent for appellant to justify or attempt to justify himself for carrying a pistol on the occasion in question. In cross-examination, the State could show that appellant was not justified in carrying the pistol, but did same wrongfully. The question asked and the answer elicited by the State would suggest to the jury that appellant was carrying the pistol on account of a difficulty with the Williams boys, and that that difficulty arose about a woman, and that appellant was implicated in some way about a woman. At this juncture he proposed to show that he was in no wise connected with the woman; that it was his brother, and he was not in the county at the time. We believe in as much as the testimony elicited by the State on cross-examination was calculated to impress the jury with the idea that his carrying the pistol for the Williams boys was in regard to a woman, that he ought to have been permitted to show that he had nothing to do with the woman, and was not in the county at the time. We do not believe it was fair for the State to leave him in a difficulty complicated somehow with a woman, when he proposed to show that he was not so complicated with the woman and was not at fault in that regard.

We also believe that it was competent for appellant, in cross-examination of the witness Brundige, to have shown that the $35 note which it was claimed prosecutor owed and which appellant was trying to collect from him, had not been paid at the time of the difficulty. According to the defendant's theory, the difficulty arose about that matter. Of course, the State's theory did not involve that note, but that

afforded no reason why appellant could not fully develop his theory in regard to the note, and in that connection show that it had not been paid at the time of the difficulty.

We do not believe it was competent to lay a predicate for impeachment of the witness Ballinger, to the effect that on one occasion, in connection with other testimony, which was admitted, that he denied he had stolen a watch from a woman and sold it for $100; and then contradict him by W. R. Adcock. This was entirely a collateral issue, and if appellant proved this part of the conversation, it being collateral, he was required to accept it: at any rate, he was not authorized to contradict it.

Nor do we believe it was competent for appellant to show that Ballinger (prosecutor) said he did not believe there was any Heaven or Hell or any God. This had no connection with the difficulty, and his belief in this respect furnished no occasion for appellant to have assaulted him. The court did not err in excluding it.

Furthermore, we do not believe the court erred in excluding the testimony of W. E. Brundige (father of defendant) to the effect that he was approached by Ligon and Coleman, with a message from Prosecutor Ballinger, if he would pay him (Ballinger) $50 or $60, he would leave the country and not testify against defendant. This fact could have been proven against witness Ballinger; or if he denied said fact it would furnish the predicate for contradiction. But we do not understand this bill to present the matter in that way. As offered the testimony was hearsay; that is, that Ligon and Coleman told Brundige that Ballinger told them he would take $50 or $60 and leave the State.

On another trial we believe, to save any question, provided the issue is presented in the same way as in this record, the court should instruct the jury, if they believe there is testimony of the State in the examination of the witnesses Driver, Smith and Carlow, tending to show said witnesses testified, that Ballinger told them the difficulty arose from the fact that appellant had a pistol, and was noisy and boisterous, halloaing at people along the road, and that prosecutor was lecturing or advising defendant against such a course of conduct, etc., that the jury could not use this as original testimony as to how the difficulty occurred, but they could only use the same in support of the credibility of said witness, if they believed it had that effect, provided they believed the same had been attacked by appellant.

We do not deem it necessary to discuss the other assignments. For the errors pointed out the judgment is reversed and the cause remanded.

Brooks, Judge, absent.

*Reversed and remanded.*